### KRISCH v. DAY.

(Supreme Court, Appellate Division, First Department. April 4, 1912.)

1. EVIDENCE (§ 441*)—PAROL EVIDENCE—WRITTEN CONTRACTS—MERGER.

A conversation by a real estate broker with the owner before the execution of a written contract of agency is merged into the subsequent contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441;* Sales, Cent. Dig. § 721.]

2. BROKERS (§ 53*)—ACTIONS FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.

Where the written contract between an owner and agent provided that commissions should be paid upon sales made to purchasers brought

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the agent to the owner's office, or to the agent who was the procuring cause of the sale, the broker must show that he brought the customer to the office or was the procuring cause of the sale in order to recover.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

Appeal from Trial Term, New York County.

Action by Frederick F. Krisch against Joseph P. Day. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

H. Schieffelin Sayers, for appellant.
Walter L. Post, for respondent.

LAUGHLIN, J. The plaintiff is a real estate broker, and he sues to recover commissions on the sale of vacant lots at Manhattan Beach, pursuant to an agreement by which he was employed by the defendant for that purpose. The agreement was in writing, and, so far as material to the questions presented for review, it provided as follows:

"The agent shall be paid a commission of ——— per cent. on the net purchase price for sales of houses, and a commission of 5 per cent. on the net purchase prices on sales of lots; such commissions to be paid upon sales made to purchasers who shall be brought by the agent to the main office of Joseph P. Day or to his branch office on the property at the time of making the sales deposits, or who shall be the procuring cause of the sale. In either of the above cases the agent shall be entitled to the commission, and not otherwise, and not where another agent has a better claim."

The agents were also directed by printed instructions, among other things, "to secure name and addresses of all your leads and file them with the main office if you wish to be protected," and to bring their customers to the main office on the property to enable the manager to assist after the agent had exhausted his resources, and to make a written report to one of defendant's offices every night "in order that· we may follow up your leads with circulars, maps, etc. Report on your leads at least twice a week, in writing, Tuesday and Friday."

Commissions are claimed on account of the purchase of certain lots by one Timothy Murray. The plaintiff showed that, after having been thus employed by defendant, he was in the latter's office at Manhattan Beach and saw Murray, whom he did not know, outside, and he went out and asked if he could give him any information with respect to the Manhattan Beach property, to which Murray replied that he did not know, but he asked for a booklet, and plaintiff gave him a map, and on being asked his name Murray said that he knew Mr. Day and did not wish to be bothered about purchasing lots, but plaintiff persisted in requesting Murray's name, stating as a reason that without it· he would not be protected in the event of a purchase, and that thereupon Murray gave him his. surname and address, but he repeated that he did not wish to be bothered, and that "he didn't want anybody chasing after him." The plaintiff handed in Murray's surname and the address which he obtained, which, however, was 160

Broadway instead of the correct address 165 Broadway, and he never had any interview or communication with Murray thereafter, or did anything further with respect to inducing Murray to purchase the lots. Murray testified that, at the time when the plaintiff spoke to him, he was attracted by defendant's sign and office, and that he informed the plaintiff that he was not a customer, but was merely looking for information while he was waiting for his boys, who had been in bathing; that if any literature or other information was mailed to him concerning the lots he did not receive or read it; and that the purchase of the lots by him was due to the fact that some months later he heard another agent of the defendant telephoning with respect to Manhattan Beach lots, and especially recommending their purchase upon the theory that the prices would soon be advanced, and he thereupon inquired of that agent about the lots, and the negotiations thus started resulted in the purchase.

[1] The plaintiff further testified that prior to the making of the contract in writing he had a conversation with the defendant, in and by which the defendant stated, in substance, that the agent who procured and listed a name first should receive a commission in the event of any subsequent purchase by that party. This conversation, however, preceded the agreement in writing and was merged therein, and is entirely inconsistent therewith.

[2] Under the agreement in writing, which is controlling, it was essential for the plaintiff to show that he brought the customer to the defendant's office, or that he was the procuring cause of the sale, and the evidence adduced by the plaintiff is wholly insufficient to sustain a recovery upon either theory.

The plaintiff should have been nonsuited; but we have no alternative but to reverse the judgment and order and grant a new trial, with costs to appellant to abide the event. All concur.